**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHARLES HERBERT PROCTOR, III and SYNOVA ASSET MANAGEMENT, LLC, on Behalf of Themselves and All Others Similarly Situated, | |
| Plaintiffs, | Case No. 20 Civ. 05360 (PAE) |
| v. | ECF Case |
| JPMORGAN CHASE & CO., J.P. MORGAN CLEARING CORP., J.P. MORGAN SECURITIES LLC, J.P. MORGAN FUTURES, INC. (now known as J.P. MORGAN SECURITIES LLC), and JOHN DOES 1-50, | |
| Defendants. | |
| ROBERT CHARLES CLASS A, L.P., on Behalf of Itself and All Others Similarly Situated, | |
| Plaintiff, | Case No. 20 Civ. 05298 (PAE) |
| v. | ECF Case |
| J.P. MORGAN CHASE & CO., J.P. MORGAN CLEARING CORP., J.P. MORGAN SECURITIES LLC, J.P. MORGAN FUTURES, INC. (now known as J.P. MORGAN SECURITIES LLC), and JOHN DOES 1-50, | |
| Defendants. | |

*[caption continued on next page]*

**CAFFERTY'S MEMORANDUM IN SUPPORT OF MOTION TO APPOINT
THE LOWEY AND KIRBY FIRMS AS INTERIM CO-LEAD COUNSEL**

1

THOMAS GRAMATIS, on Behalf of
Himself and All Others Similarly Situated,

                    Plaintiff,                          Case No. 20 Civ. 05918 (PAE)
          v.                                           ECF Case

JPMORGAN CHASE & CO., J.P.
MORGAN CLEARING CORP., J.P.
MORGAN SECURITIES LLC, J.P.
MORGAN FUTURES, INC. (now known
as J.P. MORGAN SECURITIES LLC),
and JOHN DOES 1-50,

                    Defendants.

BUDO TRADING LLC, Individually and
on Behalf of All Others Similarly Situated,

                    Plaintiff,                          Case No. 20 Civ. 05772 (PAE)
          v.                                           ECF Case

J.P. MORGAN CHASE & CO., J.P.
MORGAN CLEARING CORP., J.P.
MORGAN SECURITIES LLC, J.P.
MORGAN FUTURES, INC. (now known
as J.P. MORGAN SECURITIES LLC),
and JOHN DOES 1-50,

                    Defendants.

2

Cafferty Clobes Meriwether & Sprengel LLP ("Cafferty") respectfully requests that Lowey Dannenberg P.C. and Kirby McInerney LLP ("Lowey and Kirby") be appointed interim co-lead counsel. In addition to working with Lowey and Kirby to file the first complaint in this matter on behalf of Charles Proctor and Synova Asset Management, Cafferty has several clients who traded significant volumes of Treasury futures and options at issue in this case and who stand ready to assist in the prosecution of the Class' claims. Although Cafferty is qualified to lead this case, for the reasons explained below, it has stepped back and unequivocally supports Lowey and Kirby as interim co-lead counsel.

### Although Qualified to Lead This Case, Cafferty Stepped Down to Serve the Class' Interests

Cafferty has prosecuted commodity manipulation cases for decades. It has led, and it is currently leading, numerous Commodity Exchange Act ("CEA") and Sherman Act matters involving the financial markets. *See* Firm Resume (attached as Exhibit A). Cafferty worked closely with proposed lead counsel in a CBOT Treasury futures manipulation case, *Hershey/Kohen v. Pacific Investment Management Co. LLC*, No. 05 C 4681 (N.D. Ill.), which resulted in a favorable class certification ruling that was upheld on appeal, 571 F.3d 672 (7th Cir. 2009), and that ultimately led to a $118 million settlement for the Treasury futures class. This area of law, Cafferty knows well. Cafferty also brings a diverse team of lawyers to this matter. The majority of its equity partners are women, including managing partner Jennifer W. Sprengel who will be involved in this case. Cafferty has also assigned two newer attorneys with experience prosecuting commodity manipulation cases: Kaitlin Naughton (admitted 2019) and Brian P. O'Connell (admitted 2013). Finally, Anthony F. Fata, has unique subject matter experience, as counsel for investors in class actions alleging commodity manipulation (including spoofing) and as counsel for trading firms in regulatory proceedings involving alleged manipulation (including spoofing).

1

Despite these attributes, Cafferty fully supports Lowey and Kirby as co-lead counsel.

## Kirby and Lowey's Leadership in this Case

Kirby and Lowey have already demonstrated significant leadership in this case. First, they were the first to file and thus demonstrated leadership in "identifying and investigating potential claims." *See* Fed. R. Civ. P. 23(g)(1)(A).  Complaints by competing movants for leadership appear to duplicate in many respects Lowey and Kirby's complaint.   Second, Lowey and Kirby's "experience in handling class actions, other complex litigation, and the types of claims asserted in this action," Fed. R. Civ. P. 23(g)(1)(A)(ii), is second to no other group in this case.[1] Both firms have successfully led financial market manipulation cases arising under the CEA. *See In re Amaranth Natural Gas Commodities Litigation,* Master File No. 07 Civ. 6377 (S.D.N.Y) (SAS); *In re Libor-Based Financial Instruments Antitrust Litigation*, 1:11-md-02262-NRB (S.D.N.Y.).

In addition, Lowey and Kirby have already led in this case by initiating inclusive, private ordering discussions. These discussions began when they reached out to Cafferty to assist with the first-filed case. As additional cases were filed, Lowey and Kirby maintained an open dialogue with the new filers. These discussions included involving the competing leadership movants in significant roles, which offers appear to have been rejected.

Finally, Lowey and Kirby acted in the Class' best interests when they avoided delays associated with a protracted MDL contest. There is no question that the first-filed case was properly filed in the Northern District of Illinois, home of the CME Group, Inc., and the exchange on which the Treasury contracts at issue traded. Of course, the Southern District of New York, home of JP Morgan, is also a proper forum. But the Class did not need a second forum. The

---

[1] The other pertinent factors, "counsel's knowledge of the applicable law" and "the resources that counsel will commit to representing the class," Fed. R. Civ. P. 23(g)(1)(A)(iii)-(iv), are likely to be similar across all competing firms.

competing leadership nonetheless initiated MDL proceedings to move the case to this second forum. Rather than allowing protracted MDL proceedings to delay this matter (which would not be in the Class' interests), Lowey and Kirby demonstrated leadership by organizing the transfer of cases from the Northern District of Illinois to the Southern District of New York.

Cafferty and four other firms—all of whom could lead the case—stepped back very early to support Lowey and Kirby. They did so because, in a situation such as this, private ordering is in the Class' interests. Likewise, these firms all agreed to transfer their cases because avoiding MDL delays in a case such as this is in the Class' interests. It is Cafferty's understanding that the competing leadership movants were offered similar supporting roles as Cafferty and the four other firms who are supporting Lowey and Kirby. Cafferty respectfully submits that these other firms supporting Nussbaum Law Group, P.C. should not be rewarded simply because they filed subsequent complaints in a different forum, presented risks associated with delays, and refused to accept meaningful roles in the case.

For the foregoing reasons, Cafferty respectfully submits that Kirby and Lowey should be appointed as interim co-lead counsel.

Dated: August 21, 2020

s/ Anthony F. Fata
Anthony F. Fata
Jennifer W. Sprengel
Brian P. O'Connell
Kaitlin Naughton
Cafferty Clobes Meriwether & Sprengel LLP
150 S. Wacker, Suite 3000
Chicago, Illinois 60606
Phone: (312) 782-4880
Email: afata@caffertyclobes.com
jsprengel@caffertyclobes.com
boconnell@caffertyclobes.com
knaughton@caffertyclobes.com
***Counsel for Plaintiffs and the Proposed Class***

3

## <u>Certificate of Service</u>

I hereby certify that on August 21, 2020, I caused a copy of the foregoing to be served via electronic mail on all parties registered for CM/ECF in the above-captioned matter.

<u>s/ Anthony F. Fata</u>
Anthony F. Fata

# EXHIBIT A





*Successful Solutions for Complex Litigation*

www.caffertyclobes.com

# Firm Overview

Cafferty Clobes Meriwether & Sprengel LLP combines the talents of attorneys with a wide range of experience in complex civil litigation. The skill and experience of CCMS attorneys has been recognized on repeated occasions by courts that have appointed these attorneys to major positions in complex multidistrict or consolidated litigation. As the representative sampling of cases listed below demonstrates, these attorneys have taken a leading role in numerous important actions on behalf of investors, employees, consumers, businesses and others. In addition, CCMS attorneys are currently involved in a number of pending class actions, as described on the Firm's web page.

# Commodities Litigation

- ***Ranchers Cattlemen Action Legal Fund United Stockgrowers of America, et al., v. Tyson, et al., 19-cv-01222-JRT-HB (D. Minn.)***
  CCMS serves as interim co-lead counsel in this case involving alleged manipulation of cattle and cattle futures prices by major meatpackers, as well as an antitrust conspiracy.

- ***In re Libor-Based Financial Instruments, 11-md-2262 (S.D.N.Y)***
  CCMS serves as class counsel for exchange trader plaintiffs in claims involving manipulation in violation of the Commodity Exchange Act against many of the world's largest financial institutions.

- ***Hershey/Kohen v. Pacific Investment Management Co. LLC, No. 05 C 4681 (N.D. Ill.)***
  As liaison and class counsel in action arising from PIMCO's manipulation of 10-year treasury notes futures traded on the Chicago Board of Trade, CCMS helped secure a $118 million settlement for the class.

- ***In re Crude Oil Commodity Futures Litig., No. 11-cv-03600 (S.D.N.Y.)***
  As class counsel in action arising from manipulation of NYMEX West Texas Intermediate grade crude oil futures contracts, CCMS expended significant resources assisting the class with investigation and discovery. The collective efforts resulted in a $16.5 million settlement for the class.



- ***In re Foreign Exchange Benchmark Rates Antitrust Litigation***, **13-cv-7789 (S.D.N.Y.)**
  As class counsel in this action arising from manipulation of foreign exchange rates by international banks and others, CCMS has devoted significant resources toward investigation, discovery, and allocation of more than $2 billion in settlements for the class.

- ***In re Sumitomo Copper Litig.***, **96 Civ. 4584(MP) (S.D.N.Y.)**
  As class counsel in action arising out of manipulation of the world copper market, CCMS helped achieve settlements aggregating $134.6 million.  In awarding attorneys' fees, Judge Milton Pollack noted that it was "the largest class action recovery in the 75 plus year history of the Commodity Exchange Act." 74 F. Supp. 2d 393 (S.D.N.Y. Nov. 15, 1999).

- ***In re Soybean Futures Litig.***, **No. 89 C 7009 (N.D. Ill.)**
  As class counsel in this action against Ferruzzi Finanziaria SpA and related companies for unlawfully manipulating the soybean futures market, CCMS helped recover a $21.5 million settlement.

- ***Lawrence E. Jaffe Pension Plan v. Household International, Inc.***, **No. 1:02-cv-05893 (N.D. Ill.)**
  Securities fraud class action.  CCMS served as local counsel and helped recover a settlement of approximately $1.6 billion.

- ***In re Kaiser Group International***, **Case No. 00-2263 (Bankr. D. Del.)**
  On December 7, 2005, Chief Judge Mary F. Walrath of the United States Bankruptcy Court for the District of Delaware granted final approval to a settlement that produced 175,000 shares of common stock for a class of former shareholders of ICT Spectrum Constructors, Inc. (a company that merged with ICF Kaiser Group International and ICF Kaiser Advanced Technology in 1998).  The settlement followed Judge Joseph J. Farnan's ruling which upheld the Bankruptcy Court's decision to award common stock of the new Kaiser entity (Kaiser Group Holdings, Inc.) to the Class of former Spectrum shareholders based on contractual provisions within the merger agreement.  *See Kaiser Group International, Inc. v. James D. Pippin* (*In re Kaiser Group International*), 326 B.R. 265 (D. Del. 2005).

- ***Danis v. USN Communications, Inc.***, **No. 98 C 7482 (N.D. Ill.)**
  Securities fraud class action arising out of the collapse and eventual bankruptcy of USN Communications, Inc.  On May 7, 2001, the court approved a $44.7 million



settlement with certain control persons and underwriters.  Reported decisions:  73 F. Supp. 2d 923 (N.D. Ill. 1999); 189 F.R.D. 391 (N.D. Ill. 1999); 121 F. Supp. 2d 1183 (N.D. Ill. 2000).

# Consumer Class Actions

## COVID-19 Cases

- ***Compo v. United Airlines, Inc., et al.*, No. 20-cv-02166 (N.D. Ill.)**
  CCMS is serving as Co-Lead Counsel in this class action regarding United Airlines' failure to provide refunds to consumers who purchased tickets for flights that were canceled due to the COVID-19 pandemic, as required by United States Department of Transportation regulations.  The plaintiff alleges that United Airlines violated the consumer protection laws of multiple states, unjustly enriched United Airlines at the expense of its customers, and defrauded passengers.

- ***Menzel v. StubHub, Inc.*, No. CGC-20-584382 (Cal. Sup. Ct. San Fran. Co.)**
  A class action on behalf of California consumers who purchased tickets from StubHub to attend any concert, performance, sporting or other public event that was canceled, rescheduled or postponed due to the COVID-19 pandemic.  The plaintiff alleges that StubHub's refusal to provide refunds violates California consumer protection laws.

- ***Bromley et al. v. SXSW, LLC et al.*, No. 20-cv-00439 (W.D. Tex.)**
  CCMS investigated and filed the first and only class action lawsuit regarding the cancellation of the South by Southwest festival due to the COVID-19 pandemic.  The plaintiffs alleged that the defendants' refusal to issue refunds for tickets for the canceled festival constitutes a breach of the tickets' terms and conditions, constitutes a conversion of festivalgoers' property, and unjustly enriches the defendants at the expense of consumers.

- ***Cahill et al. v. TurnKey Vacation Rentals, Inc.*, No. 20-cv-00441 (W.D. Tex.)**
  CCMS filed the first and only class action on behalf of all persons who reserved a rental property managed by TurnKey Vacation Rental and who canceled the reservation, or had their reservation canceled due to the COVID-19 pandemic.  The defendant's refusal to provide refunds for canceled reservations breaches the property rental agreements, unjustly enriches TurnKey at the expense of its customers, and unfairly converts consumers' property for TurnKey's use.



- ***Hernandez v. Ultra Enterprises, Inc.*, No. 20-cv-22185 (S.D. Fla.)**
  CCMS investigated, originated, and filed the first case involving the cancellation of the Ultra Music Festival due to the COVID-19 pandemic, and the refusal to provide refunds to festivalgoers.  The plaintiffs allege that the defendant's refusal to refund tickets for the cancelled festival unfairly converts their property for defendant's use and unjustly enriches defendant at the expense of consumers.

## Other Consumer Cases

- ***Apple iPhone Warranty Litigation* (N.D. Cal.)**
  This case challenged Apple's policy of denying warranty claims based on liquid contact indicators located in headphone jacks and dock connector ports of iPhones and iPod touches. Similar class actions were subsequently filed in federal courts on behalf of Apple consumers.  CCMS helped negotiate and achieve a $53 million settlement of the state and federal cases.

- ***In re Volkswagen "Clean Diesel" Marketing, Sales Practices and Prod. Liability Litig.*, MDL No. 2672 (N.D. Cal.)**
  CCMS worked closely with lead counsel and other class counsel in this class case challenging unlawful actions by the manufacturer defendants to mask the actual diesel emission levels in various vehicle makes and models.  Judge Beyer approved a class settlement with defendants worth billions of dollars.

- ***Skeen v. BMW of N. Amer., LLC,* No. 13-cv-1531 (D.N.J.)**
  CCMS served as co-lead counsel in an action brought on behalf of owners of certain MINI Cooper-brand vehicles that contained a latent defect in a part of the engine known as the "timing chain tensioner" which caused the part to fail prematurely, eventually requiring replacement of that part or the entire engine.  Following extensive discovery and mediation, the parties reached a global settlement on behalf of a nationwide class of vehicle owners.  The efforts of the firm and its co-lead counsel resulted in a settlement which significantly extended warranty coverage, and reimbursed vehicle owners for tens of millions of dollars in out-of-pocket expenses incurred for repair and/or replacement.

- ***Ponzo v. Watts Regulator Company,* 1:14-cv-14080 (D. Mass.);** *Klug v. Watts Regulator Company,* **No. 15-cv-00061 (D. Neb.)**
  These consumer class cases, first brought by CCMS (D. Mass.) addressed defective water heater and "Floodsafe" branded connectors.  The plaintiffs in both cases alleged that the water heater connectors were made of a material that would



break down during regular use, causing leaks and ruptures that flooded class members' homes.  The efforts of the firm and its co-lead counsel resulted in a settlement that provides $14 million to affected homeowners.

- ***Traxler v. PPG Industries, Inc.,* No. 15-cv-00912 (N.D. Ohio)**
  CCMS served as lead counsel in this defective product action challenging certain defective deck resurfacing products.  The products did not adhere properly, and instead peeled, cracked, bubbled and severely damaged the surfaces to which they were applied.  In February 2017 the parties reached an agreement in principle to settle the case on behalf of a nationwide class of consumers.  The efforts of the firm and its co-counsel resulted in a settlement that provides $6.5 million to affected homeowners.

- ***In re Takata Airbag Prod. Liability Litig.,* MDL No. 2599 (S.D. Fla.)**
  CCMS represents six named Class Plaintiffs and has been and continues to work closely with lead counsel on this multi-billion dollar case involving defective airbags installed in tens of millions of affected vehicles manufactured by most major manufacturers.  Class settlements with Honda and BMW providing class members with hundreds of millions of dollars and substantial programmatic relief have been finally approved and are the subject of pending appeals.

- ***In re General Motors Corp. Air Conditioning Marketing and Sales Practices Litig.,* MDL No. 2818 (E.D. Mich.)**
  After conducting a significant pre-suit investigation, CCMS filed the first class action in the Eastern District of Michigan seeking relief on behalf of owners of GM vehicles suffering from a defect in the air conditioning system which typically results in total system failure, necessitating significant repairs thereto.  Since commencing the action, CCMS has communicated with dozens of affected consumers and worked with GM assess the scope and nature of an extended warranty program GM implemented in a purported effort to resolve the claims of certain vehicle owners. On April 11, 2018, the Court appointed CCMS co-lead counsel.

- ***Squires et al., v. Toyota Motor Corp., et al.,* No. 18-cv-00138 (E.D. Tex.)**
  CCMS investigated, originated and filed the first and only consumer class action brought on behalf of owners of multi-model year Toyota Prius vehicles that suffer from a defect that causes windshields to crack and fail in ordinary and foreseeable driving conditions.  Plaintiffs allege that Defendants have breached express and implied warranties, and have violated the consumer protection statutes of various States.



- ***Gonzalez, et al., v. Mazda Motor Corp.*, et al.**, **No. 16-cv-2087 (N.D. Cal.)**
  CCMS is lead counsel in a consumer class action brought on behalf of owners of Model Year 2010-15 Mazda3 vehicles with defective clutch assemblies that cause them to prematurely fail.  Plaintiffs allege that Defendants have breached express and implied warranties, and have violated the consumer protection statutes of various states.  *See, e.g., Gonzalez v. Mazda Motor Corp.*, No. 16-CV-02087-MMC, 2017 WL 345878 (N.D. Cal. Jan. 5, 2017) (denying and granting in part Defendants' motion to dismiss).

- ***Albright v. The Sherwin-Williams Company***, **No. 17-cv-02513 (N.D. Ohio)**
  CCMS is serving as Co-Lead Counsel in this class action concerning deck resurfacing products sold under the Duckback and SuperDeck brand names.  Plaintiffs allege that defendants have breached express and implied warranties, and have violated the consumer protection statutes of various states.

- ***Anderson v. Behr Process Corp.,*** **No. 1:17-cv-08735 (N.D. Ill.)**
  CCMS is serving as Co-Lead Counsel in this class action brought on behalf of purchasers of various deck coating products from 2012 through the present.  After many months of mediation and settlement negotiations, and successfully opposing efforts by other plaintiffs and firms to have the JPML centralize pending cases, the parties have agreed to a proposed Class settlement which will provide substantial valuable monetary relief to Class members to refund the cost of product purchased as well as compensate them for damage to their decks and the costs of restoring and repairing the same.

- ***Bergman v. DAP Products, Inc.***, **14-cv-03205 (D. Md.)**
  CCMS served as lead counsel in this class action on behalf of consumers who purchased various models of "XHose" garden hoses, which were flexible outdoor hoses that were predisposed to leaking, bursting, seeping, and dripping due to design defects.  The court approved a nationwide settlement providing hundreds of thousands of consumer class members with the opportunity to recover a substantial portion of their damages.

- ***In re Midway Moving & Storage, Inc.'s Charges to Residential Customers,*** **No. 03 CH 16091 (Cir. Ct. Cook Cty., Il.)**
  A class action on behalf of customers of Illinois' largest moving company.  A litigation class was certified and upheld on appeal. See Ramirez v. Midway Moving and Storage, Inc., 880 N.E.2d 653 (Ill. App. 2007).  On the eve of trial, the case settled on a class-wide basis.  The court stated that CCMS is "highly experienced in complex



and class action litigation, vigorously prosecuted the Class' claims, and achieved an excellent Settlement for the Class under which Class members will receive 100% of their alleged damages."

- ***Walter Cwietniewicz d/b/a Ellis Pharmacy, et al. v. Aetna U.S. Healthcare*, June Term, 1998, No. 423 (Pa. Common Pleas)**
  On May 25, 2006, the court granted final approval to a settlement of a class action brought on behalf of pharmacies that participated in U.S. Healthcare's capitation program seeking to recover certain required semi-annual payments.  At the final approval hearing, the court found that "this particular case was as hard-fought as any that I have participated in" and with respect to the Class's reaction to the settlement achieved as a result of our firm's work: ". . . a good job, and the reason there should be no objection, they should be very very happy with what you have done."

- ***Davitt v. American Honda Motor Co., Inc.,* No. 13-cv-381 (D.N.J.)**
  CCMS served as plaintiffs' counsel in a class action brought on behalf of owners of 2007-09 Honda CRV vehicles that suffered from a defect that predisposed the door-locking mechanisms to premature failure.  Following extensive dismissal briefing, discovery and mediation, the parties arrived at a global settlement that provided class members with extended warranty coverage for the defect and reimbursement of out-of-pocket expenses incurred in connection therewith.

- ***Sabol v. Ford Motor Company,* No. 2:14-cv-06654 (E.D. Pa.)**
  CCMS served as Lead Counsel in this class case brought on behalf of owners of various model 2010-2015 Ford, Volvo and Land Rover vehicles allegedly including a defect in certain Ecoboost engines.  Defendant claimed it addressed and repaired the problem through a series of recalls and repairs.  After briefing summary judgment and class certification, and several years of hard fought litigation, including substantial discovery, the parties entered into a settlement providing substantial monetary and other relief.

- ***Lax v. Toyota Motor Corp.,* No. 14-cv-1490 (N.D. Cal.)**
  CCMS served as class counsel in an action brought on behalf of owners of certain Toyota-brand vehicles that contained a defect which caused vehicles to consume oil at accelerated rates, often resulting in catastrophic engine failure.  Following extensive discovery and mediation, the parties reached a private settlement following Toyota's implementation of an extended warranty and reimbursement program for affected vehicles.  ECF No. 82.



# Antitrust Class Actions and Litigation

- ***In re Insurance Brokerage Antitrust Litig., MDL No. 1663 (D.N.J.)***
  CCMS served as Co-Lead Counsel for plaintiffs in this class case alleging that insurance brokers and insurers conspired to allocate customers in a complicated scheme to maximize their own revenues at the expense of class members.  The litigation concluded in 2013 with final approval of the last of five separate settlements that, in total, exceeded $270 million. Judge Cecchi observed that "Class counsel include notably skilled attorneys with experience in antitrust, class actions and RICO litigation."  *In re Insurance Brokerage Antitrust Litig.*, 297 F.R.D. 136, 153 (D.N.J 2013); *see also In re Insurance Brokerage Antitrust Litig.*, MDL No. 1663, 2007 WL 1652303, at *6 (D.N.J. June 5, 2007).

- ***VisaCheck/MasterMoney Antitrust Litig., Master File No. 96-5238 (E.D.N.Y.)***
  CCMS's client, Burlington Coat Factory Warehouse, and the other plaintiffs, alleged that Visa and MasterCard violated the antitrust laws by forcing retailers to accept all of their branded cards as a condition of acceptance of their credit cards.  The parties entered into settlement agreements that collectively provided for the payment of over $3.3 billion, plus widespread reforms and injunctive relief.

- ***In re National Collegiate Athletic Association Athletic Grant-in-Aid Cap Antitrust Litig., No. 4:14-md-02541 (N.D. Cal.)***
  CCMS represents a former Division 1 college basketball player in this antitrust litigation challenging the cap imposed by the NCAA on grant-in-aid packages.  The efforts of the firm and its co-counsel resulted in certification of an injunctive class and a settlement of $209 million.

- ***Kamakahi v. American Society for Reproductive Medicine*, No. 3:11-cv-01781 (N.D. Cal.)**
  CCMS served as Co-Lead Counsel in a cutting edge antitrust case challenging the legality of ethical guidelines promulgated by two professional associations that limited the compensation members were permitted to pay to women providing donor services for in-vitro fertilization.  Without the benefit of a parallel government case or investigation, CCMS achieved a groundbreaking settlement that required defendants to eliminate the compensation caps and to refrain from imposing similar caps in the future.



- ***In re New Motor Vehicles Canadian Export Antitrust Litig.,*** **MDL No. 1532 (D. Me.)**
  CCMS served as Class Counsel in multidistrict litigation alleging that automobile manufacturers and other parties conspired to prevent lower priced new motor vehicles from entering the American market thereby artificially inflating prices.  The court approved a $37 million settlement with Toyota and the Canadian Automobile Dealers' Association.

- ***In re TriCor Indirect Purchaser Antitrust Litig.,*** **No. 05-360 (D. Del)**
  CCMS served as Lead Counsel for consumer and third-party payor plaintiffs who alleged that defendants engaged in unlawful monopolization in the market for fenofibrate products, which are used to treat high cholesterol and high triglyceride levels.  The court approved to a $65.7 million settlement (an amount that excludes an initial payment to opt-out insurance companies).

- ***In re Prandin Direct Purchaser Antitrust Litig.,*** **Civ. No. 10-12141 (E.D. Mich.)**
  CCMS served as Co-Lead counsel for a plaintiff class of direct purchasers of the prescription drug repaglinide, which is manufactured and marketed by Novo Nordisk under the brand-name Prandin.  Plaintiffs alleged that Novo Nordisk blocked FDA approval of generic versions of the drug by wrongfully manipulating the language of the "use code" filed with the FDA in connection with a method of use patent.  The court approved a $19 million settlement.

- ***In Re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litigation,*** **MDL No. 2819 (E.D.N.Y)**
  CCMS is a member of the Executive Committee representing a putative class of indirect purchasers of Restasis, an eye-drop used to treat dry-eye syndrome, and allege that Defendant Allergan engaged in various anticompetitive activities to illegally prolong the life of its patents over Restasis, and to otherwise forestall the entry of generic competition into the cyclosporine market.

- ***In re Disposable Contact Lens Antitrust Litigation,*** **MDL No. 2626 (M.D. Fla.)**
  CCMS serves on the Defendant Discovery Committee, which is tasked with overseeing all aspects of discovery pertaining to Defendants, who are alleged to have conspired to implement retail price maintenance agreements intended to inflate the prices of disposable contact lenses to supracompetitive levels.  Plaintiffs already have secured an $8 million settlement from Defendant CooperVision.



Cafferty Clobes
Meriwether & Sprengel LLP

- ***In re Automotive Parts Antitrust Litig.,*** **MDL No. 2311 (E.D. Mich.)**
  CCMS has served as a member of Plaintiffs' Executive Committee representing the end-payor class in one of the largest civil antitrust actions in US history.   As a member of the Executive Committee, CCMS has played an important role in this groundbreaking litigation in which plaintiffs have recovered over $1 billion on behalf of end-payor consumers and businesses who allege they purchased or leased new automobiles at prices that were artificially inflated as a result of automotive component manufacturers' anticompetitive conduct.

- ***Nichols v. SmithKline Beecham Corp.,*** **No.  Civ.A.00-6222 (E.D. Pa.)**
  CCMS served as Co-Lead Counsel for consumers and third-party payors who alleged that the manufacturer of the brand-name antidepressant Paxil misled the U.S. Patent Office into issuing patents that protected Paxil from competition from generic substitutes.  The court approved a $65 million class action settlement for the benefit of consumers and third-party payors who paid for Paxil.

- ***In re Relafen Antitrust Litig.*** **No. 01-12239 (D. Mass.)**
  The court approved a $75 million class action settlement for the benefit of consumers and third-party payors who paid for branded and generic versions of the arthritis medication Relafen.  In certifying an exemplar class of end-payors, the court singled out our Firm as experienced and vigorous advocates.  *See In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 273 (D. Mass. 2004).  In the opinion granting final approval to the settlement, the court commented that "Class counsel here exceeded my expectations in these respects [*i.e.*, experience, competence, and vigor] in every way."  *In re Relafen Antitrust Litig.,* 231 F.R.D. 52, 85 (D. Mass. 2005); *see also id.* at 80 ("The Court has consistently noted the exceptional efforts of class counsel.").

- ***In re Warfarin Sodium Antitrust Litig.,*** **MDL 98-1232 (D. Del.)**
  Multidistrict class action on behalf of purchasers of Coumadin, the brand-name warfarin sodium manufactured and marketed by DuPont Pharmaceutical Company. Plaintiffs alleged that the defendant engaged in anticompetitive conduct that wrongfully suppressed competition from generic warfarin sodium.   The Court approved a $44.5 million settlement.

- ***In re Cardizem CD Antitrust Litig.,*** **MDL No. 1278 (E.D. Mich.)**
  Multidistrict class action on behalf of purchasers of Cardizem CD, a brand-name heart medication.   Plaintiffs alleged that an agreement between the brand manufacturer and a generic manufacturer unlawfully stalled generic competition.



The court approved an $80 million settlement for the benefit of consumers, third-party payors and state attorneys general.

- ***In re Synthroid Marketing Litig.,* MDL No. 1182 (N.D. Ill)**
  This multidistrict action arose out of alleged unlawful activities with respect to the marketing of Synthroid, a levothyroxine product used to treat thyroid disorders. The court approved a consumer settlement in the amount of $87.4 million.

# Individual Biographies

## PARTNERS



**PATRICK E. CAFFERTY** graduated from the University of Michigan, with distinction, in 1980 and obtained his J.D., *cum laude*, from Michigan State University College of Law in 1983. From 1983 to 1985, he served as a prehearing attorney at the Michigan Court of Appeals and as a Clerk to Judge Glenn S. Allen, Jr. of that Court. Mr. Cafferty is an experienced litigator in matters involving antitrust, securities, commodities, and the pharmaceutical industry. In 2002, Mr. Cafferty was a speaker at a forum in Washington D.C. sponsored by Families USA and Blue Cross/Blue Shield styled "Making the Drug Industry Play Fair." At the Health Action 2003 Conference in Washington D.C., Mr. Cafferty was a presenter at a workshop titled "Consumers' Access to Generic Drugs: How Brand Manufacturers Can Derail Generic Drugs and How to Make Them Stay on Track." In 2010, Mr. Cafferty made a presentation on indirect purchaser class actions at the American Antitrust Institute's annual antitrust enforcement conference. *See Indirect Class Action Settlements* (Am. Antitrust Inst., Working Paper No. 10-03, 2010). Mr. Cafferty is admitted to the state bars of Michigan and Illinois, and holds several federal district and appellate court admissions. Mr. Cafferty has attained the highest rating, AV®, from Martindale-Hubbell and is a top rated SuperLawyer®.



**BRYAN L. CLOBES** is a 1988 graduate of the Villanova University School of Law and received his undergraduate degree from the University of Maryland. Mr. Clobes clerked for Judge Arlin M. Adams of the United States Court of Appeals for the Third Circuit, Judge Mitchell H. Cohen of the United States District Court for the District of New Jersey, and Judge Joseph Kaplan of the Maryland Circuit Court in Baltimore. From 1989 through June, 1992, Mr. Clobes served as Trial Counsel to the Commodity Futures Trading Commission in Washington, D.C. Mr. Clobes has served as lead counsel in many of the firm's class cases covering all areas of the firm's practice, and is widely recognized as an expert in class action litigation. Mr. Clobes has authored briefs filed with the Supreme Court in a number of class cases, served as a panelist for class action, consumer and antitrust CLE programs, has sustained and maintained the highest rating, AV®, from Martindale-Hubbell, and has been named a

Cafferty Clobes
Meriwether & Sprengel LLP

"Super Lawyer" for the past twelve years.  Mr. Clobes is admitted to the bar in New Jersey and Pennsylvania, and admitted to practice in several federal district and appellate court admissions.



**ANTHONY F. FATA** graduated from the Miami University of Ohio (B.A., 1995), and *with honors* from the Ohio State University College of Law (J.D. 1999), where he was elected to the Order of the Coif and served as Managing Editor of The Ohio State Journal on Dispute Resolution.  Mr. Fata began his career at McDermott Will & Emery, where he defended SEC enforcement actions as well as securities, consumer and product defect class actions.  Since joining CCMS, Mr. Fata has successfully prosecuted a wide range of commodities, securities, antitrust and consumer class actions.  Mr. Fata has also successfully represented clients in securities arbitrations, corporate investigations, securities/commodities regulatory proceedings, commercial litigation and transactional matters.  Mr. Fata serves an Adjunct Professor for the Seton Hall University Law School's M.S.J. and L.LM online programs, where he has taught Securities Regulation and Compliance, Regulating Brokers and Dealers, Corporate Governance Enforcement and Risk Management, Corporate Finance, and Corporate Law.   Mr. Fata has authored numerous articles concerning the securities industry, corporate governance, internal investigations and class actions.  Mr. Fata serves on the Editorial Board of the Chicago Bar Association's *CBA Record*.  He also serves as an investigator on the Chicago Bar Association's Judicial Evaluation Committee.  He is admitted to the bar in Illinois, and holds several federal and appellate court admissions.



**DANIEL O. HERRERA** received his law degree, *magna cum laude*, and his MBA, with a concentration in finance, from the University of Illinois at Urbana-Champaign in 2008.  Mr. Herrera received his bachelor's degree in economics from Northwestern University in 2004.  Mr. Herrera joined CCMS as an associate in 2011 and is resident in its Chicago, Illinois Office.  Since joining CCMS, Mr. Herrera has successfully prosecuted a wide range of antitrust, consumer and commodities class action.  Prior to joining CCMS, Mr. Herrera was an associate in the trial practice of Mayer Brown LLP, a Chicago-based national law firm, where he defended corporations in securities and antitrust class actions, as well as SEC and DOJ investigations and enforcement actions.  Mr. Herrera also routinely handled commercial matters on behalf of corporate clients.  Mr. Herrera is licensed to practice in Illinois and holds several federal district and appellate court admissions.

Cafferty Clobes
Meriwether & Sprengel LLP



**ELLEN MERIWETHER** received her law degree from George Washington University, *magna cum laude*, in 1985.  She was a member of the *George Washington Law Review* and was elected to the Order of the Coif.  Ms. Meriwether received a B.A. degree, *with highest honors*, from LaSalle University in 1981.   Ms. Meriwether is on the Board of Directors of the American Antitrust Institute (AAI), is Editorial Board Co-Chair of ANTITRUST, a publication by the section of Antitrust Law of the American Bar Association and serves as Vice-Chair of the Board of Directors of the Public Interest Law Center, in Philadelphia.  Since 2010, Ms. Meriwether has been included in the US News and World Report Publication of "Best Lawyers in America" in the field of Antitrust.  She has been named a "Pennsylvania Super Lawyer" since 2005 and has attained the highest rating, "AV", from Martindale-Hubbell.  She is a frequent presenter on topics relating to complex, class action and antitrust litigation and has published a number of articles on subjects relating to class actions and antitrust litigation, including, among others: "The Fiftieth Anniversary of Rule 23:  Are Class Actions on the Precipice?," *Antitrust,* (Vol. 30, No. 2, Spring 2016); "Motorola Mobility and the FTAIA:  If Not Here, Then Where?," *Antitrust*, Vo. 29, No.2 Spring 2015); *"Comcast Corp. v. Behrend:* Game Changing or Business as Usual?," *Antitrust*, (Vol. 27, No. 3, Summer 2013).  Links to these articles and others authored by Ms. Meriwether can be found on the firm's website.  Ms. Meriwether is admitted to the bar of Supreme Court of Pennsylvania and is admitted in a number of federal district court and appellate court jurisdictions.



**NYRAN ROSE RASCHE** received her undergraduate degree *cum laude* from Illinois Wesleyan University in 1995, was awarded a graduate teaching fellowship for law school, and earned her law degree from the University of Oregon School of Law in 1999.  Following law school, Ms. Rasche served as a law clerk to the Honorable George A. Van Hoomissen of the Oregon Supreme Court.  She is the author of *Protecting Agricultural Lands: An Assessment of the Exclusive Farm Use Zone System*, 77 Oregon Law Review 993 (1998) and *Market Allocation through Contingent Commission Agreements: Strategy and Results in In re Insurance Brokerage Antitrust Litigation* (with Ellen Meriwether), The Exchange: Insurance and Financial Services Developments (Spring 2015).  Since joining CCMS, Ms. Rasche has successfully prosecuted a wide range of antitrust, consumer class, securities and commodities class actions.  Ms. Rasche has been admitted to practice in the state courts of Oregon and Illinois, as well as the United States District Courts for the



Northern District of Illinois and the Southern District of Illinois.  She is also a member of the American and Chicago Bar Associations.



**JENNIFER WINTER SPRENGEL** received her law degree from DePaul University College of Law, where she was a member of the DePaul University Law Review.  Her undergraduate degree was conferred by Purdue University.  Ms. Sprengel is an experienced litigator in matters involving commodities, antitrust, insurance and the financial industries.  In addition, Ms. Sprengel is a committee member of the Seventh Circuit Electronic eDiscovery Pilot Program and is a frequent speaker regarding issues of discovery.  Links to some of her presentations and articles can be found on the firm's website. She also serves as co-chair of the Antitrust Law subcommittee of the ABA Class Action and Derivative Suits committee.  She is admitted to practice law in Illinois, holds several federal district and appellate court admissions, and has attained the highest rating, AV®, from Martindale-Hubbell.  Ms. Sprengel serves as the managing partner of the Firm.

## ASSOCIATES



**NICKOLAS J. HAGMAN** received his undergraduate degree, *magna cum laude*, from the University of Minnesota in 2008.  Mr. Hagman earned his law degree from Marquette University Law School, *cum laude*, in 2013, with a Certificate in Litigation.  During law school, Mr. Hagman served as an associate editor of the Marquette Law Review, was a member of the Pro Bono Society, and worked as an intern for the late Wisconsin Supreme Court Justice N. Patrick Crooks, and current Wisconsin Supreme Court Justice Rebecca Dallet.  Following law school, Mr. Hagman served as a judicial clerk in the Milwaukee County Circuit Court for two years.  Prior to joining CCMS in 2019, Mr. Hagman was an associate at a plaintiff-side consumer class action firm for five years.  Mr. Hagman is licensed to practice in Illinois and Wisconsin, and before the United State District Courts for the Northern District of Illinois and Eastern District of Wisconsin.  He is also a member of the Wisconsin Bar Association and Chicago Bar Association, where he is a member of the Class Action and Consumer Committees.

Cafferty Clobes
Meriwether & Sprengel LLP



**KAITLIN NAUGHTON** received her law degree from the George Washington University Law School in 2019, where she served as managing editor for the *George Washington Journal of Energy & Environmental Law*.  Ms. Naughton earned her bachelor's degree in political science and sociology with distinction from Purdue University in 2015.  Ms. Naughton joined CCMS in 2019 and is resident in its Chicago, Illinois office.  She is licensed to practice in Illinois and before the United State District Court for the Northern District of Illinois.



**BRIAN P. O'CONNELL** received his law degree in 2013 from Northwestern University Pritzker School of Law, where he served as Executive Articles Editor for the *Journal of International Human Rights Law* and was a teaching assistant at the Center on Negotiation and Mediation.  In 2009, Mr. O'Connell received B.A from Stanford University, where he served as a staff writer, features editor and, finally, Editor-in-Chief of *The Stanford Review*.  Following law school, Mr. O'Connell served a legal fellowship in the chambers of Judge Marvin E. Aspen of the United States District Court for the Northern District of Illinois.  Prior to joining CCMS, Mr. O'Connell was an associate at a firm specializing in securities and commodities litigation.  Mr. O'Connell is licensed to practice in Illinois and California, as well as the United States District Court for the Northern District of Illinois.  He is also a member of the Illinois State and Chicago Bar Associations.



**JOHN SCHEFLOW** received his law degree from the University of Wisconsin Law School in 2014, and his bachelor's degree from Miami University in 2009.  Mr. Scheflow joined CCMS's Chicago Office in 2015, and is currently representing plaintiffs in antitrust, consumer, securities, and commodities class actions.  Mr. Scheflow has also successfully represented clients in commercial litigation and transactional matters.  Prior to joining CCMS, Mr. Scheflow represented individuals in personal injury and mass tort cases.  Mr. Scheflow is licensed to practice in Illinois and Wisconsin and before the United States District Courts for the Northern District of Illinois and Western District of Wisconsin.

Cafferty Clobes
Meriwether & Sprengel LLP



**CHRISTOPHER P.T. TOUREK** received his law degree, *cum laude*, from the University of Illinois College of Law in 2013. In law school, he was a member of the Federal Civil Rights Clinic. Mr. Tourek earned his bachelors from Lafayette College. Mr. Tourek joined CCMS in 2017 and is resident in its Chicago, Illinois Office. Prior to joining CCMS, Mr. Tourek was an associate at a consumer protection class action firm for three years, during which time he earned the distinction of *Super Lawyers Illinois Rising Star—Class Action/Mass Torts* for 2016 and 2017. Mr. Tourek is licensed to practice in the state courts of Illinois and Washington, D.C., as well as the United States District Courts for the Northern District of Illinois, Southern District of Illinois, and the Eastern District of Michigan.

## SENIOR COUNSEL



**DOM J. RIZZI** received his B.S. degree from DePaul University in 1957 and his J.D. from DePaul University School of Law in 1961, where he was a member of the *DePaul University Law Review*. From 1961 through 1977, Judge Rizzi practiced law, tried at least 39 cases, and briefed and argued more than 100 appeals. On August 1, 1977, Judge Rizzi was appointed to the Circuit Court of Cook County by the Illinois Supreme Court. After serving as circuit court judge for approximately one year, Judge Rizzi was elevated to the Appellate Court of Illinois, First District, where he served from 1978 to 1996. Judge Rizzi became counsel to the firm in October 1996.