**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHARLES HERBERT PROCTOR, III and SYNOVA ASSET MANAGEMENT, LLC, on behalf of themselves and all others similarly situated, | |
|                Plaintiffs, | Case No. 20 Civ. 05360 (PAE) |
|         v. | ECF Case |
| JPMORGAN CHASE & CO., J.P. MORGAN CLEARING CORP., J.P. MORGAN SECURITIES LLC, J.P. MORGAN FUTURES, INC. (now known as J.P. MORGAN SECURITIES LLC), and JOHN DOES 1-50, | |
|                Defendants. | |
| ROBERT CHARLES CLASS A, L.P., on Behalf of Itself and All Others Similarly Situated, | |
|                Plaintiff, | Case No. 20 Civ. 05298 (PAE) |
|         v. | ECF Case |
| J.P. MORGAN CHASE & CO., J.P. MORGAN CLEARING CORP., J.P. MORGAN SECURITIES LLC, J.P. MORGAN FUTURES, INC. (now known as J.P. MORGAN SECURITIES LLC), and JOHN DOES 1-50, | |
|                Defendants. | |

[*caption continued next page*]

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO APPOINT
LOWEY DANNENBERG, P.C. AND KIRBY McINERNEY LLP
AS INTERIM CO-LEAD COUNSEL, AND IN OPPOSITION TO MOTION FOR
APPOINTMENT OF LINDA NUSSBAUM AND JOSEPH MELTZER**

| | |
|---|---|
| THOMAS GRAMATIS, on Behalf of himself and All Others Similarly Situated, | Case No. 20 Civ. 05918 (PAE) ECF Case |
| Plaintiff, v. | |
| JPMORGAN CHASE & CO., J.P. MORGAN CLEARING CORP., J.P. MORGAN SECURITIES LLC, J.P. MORGAN FUTURES, INC. (now known as J.P. MORGAN SECURITIES LLC), and JOHN DOES 1-50, | |
| Defendants. | |
| BUDO TRADING LLC, Individually and on Behalf of All Others Similarly Situated, | Case No. 20 Civ. 05772 (PAE) ECF Case |
| Plaintiff, v. J.P. MORGAN CHASE & CO., J.P. MORGAN CLEARING CORP., J.P. MORGAN SECURITIES LLC, J.P. MORGAN FUTURES, INC. (now known as J.P. MORGAN SECURITIES LLC), and JOHN DOES 1-50, | |
| Defendants. | |

[*caption continued next page*]

| | |
|---|---|
| ENDEAVOR TRADING, LLC, individually and on behalf of all those similarly situated,<br><br>                Plaintiff,<br>      v.<br><br>JPMORGAN CHASE & CO., J.P. MORGAN CLEARING CORP., J.P. MORGAN SECURITIES LLC, J.P. MORGAN FUTURES, INC. (now known as J.P. MORGAN SECURITIES LLC), and JOHN DOES 1-50,<br><br>                Defendants. | Case No. 20 Civ. 05285 (PAE)<br>ECF Case |
| JOHN GRACE, individually and on behalf of all those similarly situated,<br><br>                Plaintiff,<br>      v.<br><br>JPMORGAN CHASE & CO., J.P. MORGAN CLEARING CORP., J.P. MORGAN SECURITIES LLC, J.P. MORGAN FUTURES, INC. (now known as J.P. MORGAN SECURITIES LLC), and JOHN DOES 1-50,<br><br>                Defendants. | Case No. 20 Civ. 04523 (PAE)<br>ECF Case |

[*caption continued next page*]

BREAKWATER TRADING LLC, individually and on behalf of all those similarly situated,

     Plaintiff,

   v.

JPMORGAN CHASE & CO., J.P. MORGAN CLEARING CORP., J.P. MORGAN SECURITIES LLC, J.P. MORGAN FUTURES, INC. (now known as J.P. MORGAN SECURITIES LLC), and JOHN DOES 1-50,

     Defendants.

Case No. 20 Civ. 03515 (PAE)
ECF Case

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................1

ARGUMENT ..................................................................................................................2

I.      The Kirby/Lowey Team Should Be Appointed as Interim Co-Lead Counsel. ...................2

II.     The "Repeat Player" Problem is Illusory. ........................................................................5

III.    Affidavits from "Breakwater" and "Endeavor" Make Plain that Those Entities Are No Longer Active. ............................................................................................................7

IV.     No Conflict Arises from Lowey's Leadership of Precious Metals. ....................................8

CONCLUSION ..............................................................................................................11

# TABLE OF AUTHORITIES

**CASES**

*Deangelis v. Corzine*,
286 F.R.D. 220, 224 (S.D.N.Y. 2012)……………………………………………… 5

*In re Crude Oil*,
No. 11 Civ. 3600, 2012 WL 569195 (S.D.N.Y. Feb. 14, 2012)…………………… 7

*In re Interest Rate Swaps Antitrust Litig.*,
No. 16 MC 2704, 2016 WL 4131846, at *3 (S.D.N.Y. Aug. 3, 2016)…………. 3, 5, 7, 10

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
299 F. Supp. 3d 430 (S.D.N.Y. 2018)……………………………………………… 8

*In re London Silver Fixing Antitrust Litig.*,
No. 14 MD 2573, (S.D.N.Y. Nov. 25, 2014)……………………………………….. 5

*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*,
827 F. 3d 223 (2d Cir. 2016)……………………………………………………... 9

*In re Robinhood Outage Litig.*,
No. 20 Civ. 01626 (N.D. Cal. July 14, 2020)……………………………………. 5

*In re Robinhood Outage Litig.*,
No. 20 Civ. 01626 (N.D. Cal. July 22, 2020)……………………………………. 6

*In re Sumitomo Copper Litig.*,
74 F. Supp. 2d 323 (S.D.N.Y. 1999)……………………………………………….. 3

*Kuriakose v. Fed. Home Loan Mortg. Co.*,
No. 08 Civ.7281, 2008 WL 4974839 (S.D.N.Y., Nov. 24, 2008)……………….. 9

*Krim v. pcOrder.com, Inc.*,
210 F.R.D. 581 (W.D. Tex. 2002)……………………………………………… 10

**RULES AND OTHER AUTHORITIES**

Federal Rules of Civil Procedure
Rule 23(g)(1)(A)……………………………………………………………………… 2
Rule 23(g)(2)………………………………………………………………... 2, 3, 5

The law firms of Lowey Dannenberg, P.C. ("Lowey") and Kirby McInerney LLP ("Kirby") (collectively, the "Lowey/Kirby Team") respectfully submit this memorandum of law in further support of their motion to appoint their firms as interim co-lead counsel, and in opposition to the motion for appointment of Linda Nussbaum and Joseph Meltzer.

## INTRODUCTION

Two competing applicants seek to lead the above-captioned Related Actions as interim co-lead counsel: the Lowey/Kirby Team (ECF No. 45) and NLG/Kessler[1] (*Breakwater* ECF No. 27).[2] As detailed in their opening brief, the Lowey/Kirby Team has an unparalleled record of success in certifying classes and obtaining sizeable settlements on behalf of damaged investors in complex CEA litigations. Other crucial factors supporting its appointment include its depth of experience with class action cases involving these same products (futures), claims (spoofing), defendant (JPMorgan), and procedures (parallel DOJ investigations and stays); its work in developing the allegations in the first-filed complaint; its superior resources, especially in information technology; and its focus on its clients as leaders of their own litigation. NLG/Kessler's competing submission only confirms that the Lowey/Kirby Team is best suited to lead this litigation on behalf of the putative class.[3]

---

[1] Linda Nussbaum of Nussbaum Law Group, P.C. ("NLG") and Joseph Meltzer of Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz") (collectively, "NLG/Kessler").

[2] Unless otherwise noted, all references to "ECF No." are to the *Proctor* action. All references to "Br." are to Plaintiffs' Memorandum of Law in Support of Motion to Appoint Lowey Dannenberg, P.C. and Kirby McInerney LLP as Interim Co-Lead Counsel, *Charles Herbert Proctor, III et al., v. JPMorgan Chase & Co. et al.*, No. 20 Civ. 05360 (S.D.N.Y.), ECF No. 46. All references to "NLG/Kessler Br." are to Plaintiffs' Memorandum in Support of Breakwater Plaintiffs' Motion for Consolidation of All Related Cases and Appointment of Linda Nussbaum and Joseph Meltzer as Interim Co-Lead Class Counsel, *Breakwater Trading LLC v. JPMorgan Chase & Co. et al.*, No. 20 Civ. 03515 (S.D.N.Y.), ECF No. 28.

[3] The Lowey/Kirby Team, as well as the firms supporting their appointment consent to the consolidation of the above-captioned actions. *See* ECF No. 43; *see also* Tr. of Teleconference

Importantly, NLG/Kessler admits—indeed, emphasizes—that its own relevant Fed. R. Civ. P. 23(g)(1)(A)(ii) experience pales in comparison to that of the Lowey/Kirby Team. In the words of NLG/Kessler, the Lowey/Kirby Team has "repeatedly served as lead counsel—and frequently as sole lead counsel—in actions involving manipulation claims." NLG/Kessler Br. at 18. Beyond this concession, NLG/Kessler offers no unique value proposition for this class, especially considering that the Lowey/Kirby Team has special expertise in this area that not only fulfills *all* required criteria and optional considerations for appointment, but also, the Lowey/Kirby Team developed and filed the first complaint, which was subsequently used as a template by NLG/Kessler.

Because all of their Rule 23 arguments are underwhelming, NLG/Kessler manufactures nonexistent conflicts, rewrites history as to its purported efforts to advance the litigation and touts the case management skills of entities that do not even appear to be active corporations. None of these efforts withstand scrutiny. In short, all of the factors of Rule 23 considerations weigh in favor of appointing the Lowey/Kirby Team as interim co-lead counsel.

## ARGUMENT

### I.        The Kirby/Lowey Team Should Be Appointed as Interim Co-Lead Counsel.

Under Rule 23(g), the Court should consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). "Rule 23(g)(2) provides that the court 'must appoint the applicant best

---

Proceedings at 7-9, *Breakwater Trading LLC v. JPMorgan Chase & Co. et al.*, No. 20 Civ. 03515 (S.D.N.Y. August 13, 2020); NLG/Kessler Br. at 19-20.

able to represent the interests of' the plaintiffs," in situations where multiple applications are submitted. *See In re: Interest Rate Swaps Antitrust Litig.*, No. 16 MC 2704, 2016 WL 4131846, at *3 (S.D.N.Y. Aug. 3, 2016) (Engelmayer, P.) (citing *In re Mun. Derivatives Antitrust Litig.*, 252 F.R.D. at 186 (quoting Fed. R. Civ. P. 23(g)(2)).

Here, the Lowey/Kirby Team respectfully submits that its opening papers explain why it satisfies the requirements of Rule 23(g) and is best positioned to represent the interests of the proposed class. *See* Br. at Sections I-III. Each firm has a demonstrated track record of success achieving results in prosecuting the complex claims on behalf of futures traders. *See* Br. at Section II.C. *Cf. In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999) (Pollack, M.). For example, earlier this year, Lowey obtained class certification on behalf of a class of wheat futures traders, continuing its track record of success in successfully certifying CEA class actions and obtaining as lead counsel, co-lead counsel, or individual plaintiff's counsel some of the largest settlements in the history of the CEA. *See* Br. at 8-10. Likewise, Kirby recently secured the largest "futures-only" settlements in connection with the *LIBOR* litigation, in addition to securing private settlements against JPMorgan for alleged manipulation of silver futures (while the case was stayed) in connection with the *Shak* Actions. *See* Br. at 12, 17. The Lowey/Kirby Team will bring to bear the same experience and resources in support of the putative class in this litigation. *See* Br. at Section II.D. In recognition of the Lowey/Kirby Team's experience and early leadership in this litigation, law firms capable of leading this case on their own have decided to support the application of the Lowey/Kirby Team. *See Robert Charles* ECF No. 55 (Korein Tillery LLC, Scott+Scott, and Louis Burke P.C.), *Proctor* ECF No. 49 (Cafferty Clobes Meriwether & Sprengel LLP ("Cafferty")), *Budo* ECF No. 26 (Freed Kanner London & Millen LLC), *Gramatis* ECF No. 30 (Freed Kanner London & Millen LLC).

NLG/Kessler readily concedes the superior experience of the Lowey/Kirby Team. *See* NLG/Kessler Br. at 4-5; *see also* Section E, *infra*. Without this critical R. 23(g) requirement, NLG/Kessler instead seeks to rewrite history. First, NLG/Kessler opens by stating that the "NLG filed the first action in this District." *See* NLG/Kessler Br. at 6. However, NLG/Kessler *does not* dispute that the Lowey/Kirby Team filed the first of the competing actions. *Id.* Nor does NLG/Kessler acknowledge that their subsequent complaints copied the substantive allegations of the complaint that had already been developed and filed by the Lowey/Kirby Team. NLG/Kessler can hardly be credited for filing multiple successive copycat complaints in a naked attempt to wrest leadership away from the firms that filed the first original complaint.

Likewise, NLG/Kessler's emphasis on their filing the first complaint in this District is hardly remarkable. CEA class actions are typically filed and prosecuted in the district where the primary domestic futures exchange is located. Accordingly, the Lowey/Kirby Team filed in the Northern District of Illinois because Treasury Futures trade on the Chicago Board of Trade. The CME's books, records, and Globex servers—which will contain much of the relevant proof of impact on prices—are also located in that judicial district. *See* ECF No. 1 at ¶ 10. Contrary to the assertion in the NLG/Kessler brief (*see* NLG/Kessler Br. at 7), it was the Lowey/Kirby Team that reached out to Ms. Nussbaum to attempt to coordinate the cases the day after the NLG filed the second action. When the NLG eventually "invited all plaintiffs' counsel to an organizational call," (NLG/Kessler Br. at 8) it was only after many discussions about the potential to structure leadership and after NLG had prematurely filed an unnecessary JPML motion. *See In Re Treasury Futures Spoofing Litig.*, MDL No. 2958, Dkt. 1 (June 26, 2020). That MDL was mooted by the coordinated efforts of the Lowey/Kirby Team. *See* Br. at 6-7.

4

In addition, once it became apparent that NLG/Kessler would refuse to join in the private ordering that had already been agreed to by the majority of firms that had filed cases, the Lowey/Kirby Team immediately worked with defense counsel to avoid protracted proceedings before the Judicial Panel on Multidistrict Litigation and voluntarily transferred their cases to this District for the benefit of the class. *See* Br. at 6. More importantly, it was the Lowey/Kirby Team, not NLG/Kessler, that initiated Rule 408 settlement discussions with JPMorgan on behalf of the class, understanding the importance of working together in the event of a DOJ requested stay of these proceedings. *See* Br. at 6; *see also* ECF No. 34. As in every aspect of this case, the NLG simply followed along the path the Lowey/Kirby Team had already blazed.

## II.        The "Repeat Player" Problem is Illusory.

NLG/Kessler argues that "[t]heir appointment would mitigate the "repeat player" problem that has plagued Commodities Exchange Act ("CEA") class actions." NLG/Kessler Br. at 1. The argument is meritless. *First*, under Rule 23(g), competence is not a curse. On the contrary, it is *required,* as courts "must appoint the applicant best able to represent the interests of the class," when evaluating competing lead counsel applications. Fed. Rule Civ. P. 23(g)(2); *see also In re Interest Rate Swaps Antitrust Litig.*, 2016 WL 4131846, at *3; *Deangelis v. Corzine*, 286 F.R.D. 220, 224 (S.D.N.Y. 2012) (Marrero, V.) (appointing counsel with "substantial commodities futures experience of their own – as both lawyers and businesspeople" as interim lead counsel); *In re London Silver Fixing Antitrust Litig.*, No. 14 MD 2573, ECF No. 17 (S.D.N.Y. Nov. 25, 2014) (Caproni, V.) (appointing Lowey and co-counsel interim co-lead counsel in contested leadership application where Lowey team was "best able to represent the putative class"). For the reasons discussed above (*see* Section I, *supra*) and in the opening papers, the Lowey/Kirby Team is best suited to fairly and zealously represent the interests of the class as Interim Co-Lead Counsel. *See also* Br. at Section II.C.

*Second*, NLG/Kessler's so-called "repeat" player argument rests on a distorted reading of a recent interim lead counsel order in *In re Robinhood Outage Litig.*, No. 20 Civ. 01626 (N.D. Cal. July 14, 2020), and (N.D. Cal. July 22, 2020). In *Robinhood*, Judge Donato noted that the experience of the firms applying for leadership was "likely to benefit the putative class" and was interested in expanding the diversity of the individual attorneys designated for the interim roles. *In re Robinhood Outage Litig.*, No. 20 Civ. 01626 (N.D. Cal. July 14, 2020). Those same experienced firms were appointed after addressing the court's concerns by identifying attorneys with different backgrounds and levels of experience. *See* "Order re Interim Class Counsel and Briefing Schedule," *In re Robinhood Outage Litig.*, No. 20 Civ. 01626 (N.D. Cal. July 22, 2020). Here, the Lowey/Kirby Team discussed their genuine commitment to diversity, inclusion, and opportunity in their opening papers. *See* Br. at 21-22.[4] The diverse team of attorneys primarily responsible for this litigation will draw upon the experience and mentorship of the firms' senior leadership to advance the claims on behalf of the class.

*Third*, the attempt by NLG/Kessler to cast their firms as newcomers trying to break in the plaintiffs' class action bar rings hollow. Each of those firms tout their relative experience and

---

[4] The NLG touts that it is the *only female* led firm in this litigation. That is not accurate. Kirby's litigation team will be led by Karen Lerner, who was critically involved in securing private settlements with JPMorgan in connection with the *Shak* Actions. *See* Br. at 14; *see also Shak v. JP Morgan Chase & Co*, No. 15 Civ. 992 (S.D.N.Y. July 23, 2020) [rel. 15 Civ. 994, 995], ECF No. 278. On the Lowey side, one of the primary attorneys will be Margaret MacLean, who was integral to the plaintiffs' team in the recently settled *In re GSE Bonds Antitrust Litigation* ("*GSE Bonds*") (including, for example, presenting oral argument on defendants' motion to dismiss.) Similarly, NLG/Kessler points down the chain to highlight how the supporting firm Fine Kaplan is similarly led by a woman. The Lowey/Kirby Team also can highlight how its supporting counsel brings a diverse team of lawyers to this matter. For example, at Cafferty, the majority of that firm's equity partners are women, including managing partner Jennifer W. Sprengel, who will be involved in this case. Scott+Scott's support here will be led by Amanda Lawrence, a partner with vast experience litigating financial services cases, including most recently, *GSE Bonds*, where she was the firm's primary attorney litigating the case and argued the oppositions to the motions to dismiss alongside Ms. MacLean.

successes in other substantive areas of the law, but concede that they have less experience in prosecuting CEA cases than the Lowey/Kirby Team and their supporting co-counsel, including, *inter alia*, Scott + Scott.[5] NLG/Kessler seems to be advocating that the Court select lead counsel to create business opportunities in new practice areas for them, rather than selecting the firms with admittedly greater experience representing the interests of plaintiffs in CEA class actions.[6]

**III.      Affidavits from "Breakwater" and "Endeavor" Make Plain that Those Entities Are No Longer Active.**

NLG/Kessler claims that "Breakwater and Endeavor are better positioned to assist counsel and serve the class than any other plaintiffs," but the affidavits it submitted in support of that assertion demonstrate just the opposite. NLG/Kessler Br. at 11. The affidavit of Richard Stern states candidly, "I was the Managing Member of Breakwater Capital, LLC, which was the sole owner and member of Breakwater, ***until Breakwater became inactive in early 2013***." Stern Aff. ¶ 4 (emphasis added). The affidavit of Jason Thelen is somewhat less clear about the current status of Endeavor but lines up with corporate records showing that Endeavor went from Sun Holdings to yet another company. Neither affidavit sheds any light whatsoever on who exactly NLG/Kessler's clients are, or whether inactive corporate entities, former employees who signed the affidavits, or some unnamed successor or assignee entity may be expected to pursue these claims. As the litigation proceeds, Defendants may challenge these plaintiffs' standing as well as

---

[5] Scott + Scott supports the Lowey/Kirby application here and is highly capable of leading this action. *See* S+S Br. at 1-4. However, NLG/Kessler's attempt to include that firm in statistics for appointment is irrelevant and misleading for purposes of this motion where only Lowey and Kirby seek appointment as interim co-lead counsel. *See* NLG/Kessler Br. at 18 ("…Lowey, Kirby, and Scott have repeatedly served as lead counsel….").

[6] The Lowey/Kirby Team remains amenable to including the NLG and/or Kessler among a set of pre-designated law firms at the ready whom interim co-lead counsel can deploy to assist in prosecuting the claims. *See Interest Rate Swaps*, 2016 WL 4131846, at *4; *In re Crude Oil*, No. 11 Civ. 3600, 2012 WL 569195, at *2 (S.D.N.Y. Feb. 14, 2012) (Gardephe, P.).

their adequacy and typicality of such entities as class representatives. *See, e.g., In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 535 (S.D.N.Y. 2018) (Buchwald, N.) (finding named plaintiff's claims not typical following entities' voluntary dissolution due to "unique defense" available under Illinois law).

**IV.       No Conflict Arises from Lowey's Leadership of Precious Metals.**

NLG/Kessler suggests that Lowey's leadership of the *Precious Metals* litigation "*could* raise *potential* conflict concerns." NLG/Kessler Br. at 18 (emphasis added).[7] Not one word in this story holds water. The law is misstated and so are the facts.

To begin with the facts: while the two cases are based on allegations of the same kind of conduct, spoofing, they involve entirely different products sold by entirely different trading desks. There are no overlapping class claims here and therefore no possible conflict of interest.  To argue that a firm has a dispositive conflict because the manner of conduct alleged against a single defendant is similar in two separate matters with two separate products would be to suggest that a firm is eliminated from leadership consideration merely because it has alleged a similar cause of action against a recidivist defendant's actions in a separate market.

As to the law, it is simply untrue that "a single firm's concurrent prosecution of related actions against common defendants creates a conflict that precludes any such firm from adequately representing the class in either action." NLG/Kessler Br. at 19. Courts often appoint the same counsel for related cases. Lowey, for instance, is lead counsel in the related actions *Laydon v. Mizuho Bank, Ltd.*, No. 12 Civ. 3419 and *Sonterra Capital Master Fund Ltd. v. UBS AG*, No. 15-Civ. 5844, both pending in this District before Judge Daniels. This allows for a more efficient

---

[7] This argument does not apply to Kirby as the firm is not involved in the *Precious Metals* class action.

prosecution of the cases both from the perspective of the class and the court. A problem only arises

when "[u]nitary representation of separate classes that claim distinct, competing and conflicting

relief create unacceptable incentives for counsel to trade benefits to one class for benefits to the

other in order somehow to reach a settlement." *In re Payment Card Interchange Fee & Merchant*

*Discount Antitrust Litig.*, 827 F. 3d 223, 234 (2d Cir. 2016). *Interchange* shows what such a

conflict actually looks like. There, the same counsel represented a class of plaintiffs seeking only

monetary relief and a separate class of plaintiffs seeking only injunctive relief against the same

defendants arising out of the same conduct. *See id.* at 233-34. Any gains for the monetary relief

plaintiffs would necessarily come at the expense of the injunctive relief plaintiffs (and without any

corresponding benefit to them), and vice versa. Not only that, but class counsel's fees were directly

linked to the size of the monetary recovery achieved, therefore disincentivizing them to zealously

advocate for any injunctive relief that might decrease the size of the monetary payment. *See id.* It

is hardly surprising in this context that the court found that the injunctive relief plaintiffs were

inadequately represented.

Here, by contrast, there is nothing remotely "competing" or "conflicting" about the relief

plaintiffs here seek and that were previously sought by the *Precious Metals* plaintiffs. Lowey has

every incentive in both cases to fight for the maximum possible recovery. NLG/Kessler cites an

inapposite case referring to situations where a defendant's assets might be insufficient to fully

satisfy the damages of two different sets of plaintiffs. *See Kuriakose v. Fed. Home Loan Mortg.*

*Co.*, No. 08 Civ.7281, 2008 WL 4974839, at *7 (S.D.N.Y., Nov. 24, 2008) (Keenan, J.). But

JPMorgan's assets are not so limited. Neither this lawsuit nor *Precious Metals* nor the two

combined will come anywhere close to bankrupting JPMorgan. (And, indeed, on that logic a single

firm could never represent clients in two lawsuits against the same defendant even if the subject

matter of the suits were totally unrelated—a proposition not even NLG/Kessler endorses.) The
out-of-Circuit *Krim* case NLG/Kessler cites is equally off point. There, class counsel was deemed
inadequate where, *inter alia*, it failed to even disclose to its own clients that it represented multiple
classes and had been conducting omnibus settlement negotiations for all cases. *Krim v.
pcOrder.com, Inc.*, 210 F.R.D. 581, 590 (W.D. Tex. 2002). There is of course no question of any
such situation arising here, where the proposed lead plaintiffs are sophisticated, engaged entities
and individuals who will be actively involved in their own litigation as fiduciaries for their fellow
class members. Furthermore, class members here would be represented by Kirby (who has no
involvement at all in *Precious Metals*) as well as Lowey, as yet another safeguard against any
theoretical conflict. *See In re Interest Rate Swaps Antitrust Litig.*, 2016 WL 4131846, at *4 ("[T]he
appointment of two interim co-leads…provides a safeguard in the event that a firm-specific
conflict arises that inhibits one of the interim co-lead counsel from taking on an aspect of the
representation.").

In short: there is no law or factual basis for prohibiting Lowey from representing its clients
and the class in this case. But even if there were, the district court overseeing the *Precious Metals*
litigation already ***expressly declined to find that the cases are related.*** *See Breakwater*, ECF No.
13 (June 13, 2020, Order declining statement of relatedness filed by NLG.) And during the
teleconference with the Court on August 13, 2020, the Court carefully distinguished that this
Treasury spoofing case involves different products, traders, and time periods than the precious
metals manipulation that is the subject of both the *Shak* cases and *Precious Metals*. Moreover,
NLG already conceded that *Precious Metals* is the follow-on to ***unrelated*** criminal indictments
that say nothing about the spoofing of Treasury futures at issue in this action. *See* Tr. 18:6-15;
19:8-13. Indeed, the recent JPMorgan 10-K the NLG cited in the teleconference refers to two

10

*different* investigations, one in the metals market and one in "markets for other financial instruments, such as U.S. Treasuries." JPMorgan Chase & Co. 2019 Form 10-K (Feb. 25, 2020), at 280-81. *Finally*, any suggestion that there is a "conflict" created by Lowey's role in *Precious Metals* is not only incorrect, it is hypocritical and relies on a self-serving distortion of fact. Just like Lowey, NLG represents a plaintiff in *Precious Metals*. It participates actively in the litigation, is regularly consulted by Lowey on litigation decisions, and has a financial stake that is aligned with and dependent upon Lowey's interest in the outcome of *Precious Metals*. If NLG truly believed that representing a client in *Precious Metals* generated a conflict with this action, it would not have sought appointment as interim co-lead counsel here.

## CONCLUSION

For the foregoing reasons and those set forth in their opening memorandum, the Plaintiffs respectfully request that the Court appoint the Lowey/Kirby Team as Interim Co-Lead Counsel.

Dated: September 4, 2020

**KIRBY McINERNEY LLP**

*/s/ Karen M. Lerner*
Karen M. Lerner
David E. Kovel
Anthony E. Maneiro
250 Park Avenue, Suite 820
New York, New York 10177
Telephone: (212) 371-6600
Email: klerner@kmllp.com
　　　dkovel@kmllp.com
　　　amaneiro@kmllp.com

**LOWEY DANNENBERG, P.C.**

*/s/ Vincent Briganti*
Vincent Briganti
Raymond P. Girnys
Margaret MacLean
44 South Broadway, Suite 1100
White Plains, New York 10601

11

Telephone: (914) 997-0500
Email: vbriganti@lowey.com
        rgirnys@lowey.com
        mmaclean@lowey.com

*Counsel for Plaintiffs Charles Herbert Proctor,
III and Synova Asset Management, LLC*